Thank you, Ms. Freeman. MS. FREEMAN This case is actually much simpler than those that you were just hearing about. MR. THERAPEUTIC That's good to hear. MS. FREEMAN If the proper standard is applied here, there really clearly is a duty to defend. The burden that Federal has to meet is extremely high, and I don't think that it's legitimately contested. We're talking here about the application of an exclusion, not about the scope of the       MS. FREEMAN I'm sorry. MR. THERAPEUTIC I'm sorry. MS. FREEMAN That being true, the insurer has the burden to prove the application of an exclusion by undisputed evidence that the exclusion necessarily applies to every single  MR. THERAPEUTIC Excuse me, this is going to sound like choking out in the hall. MR. THERAPEUTIC I can empathize. MR. THERAPEUTIC The marshal could subdue that person, please. MR. THERAPEUTIC I'm sorry. MS. FREEMAN That it necessarily applies to every single claim being made in the complaint     MR. THERAPEUTIC I'm sorry. MS. FREEMAN Now, in this particular case, the insurer was aware that there were disputed facts, the disputed facts being precisely the facts that they're now trying to rely upon, those disputed facts being that the alpha and well-fied employees defamed the plaintiffs in a retaliatory motive, for a retaliatory motive, because of their so-called whistleblowing. Federal was put on notice that the insurer disputed that. And their claims handler testified in deposition that she was aware that the insurers were saying that was not the reason these people were fired for good cause. And, in fact, that's what the arbitration panel ultimately found. These people were fired for good cause. The defamation, some of the defamation had something to do with the termination, because, yes, there was defamation that concerned perhaps some embezzlement that may have led to their termination. But there was also defamation, clearly defamation alleged and brought up in discovery, that had nothing to do with the termination at all. It only had to do with the affairs that they were allegedly having, some alleged drug use. And the arbitration panel agreed that, in fact, there were these two kinds of defamation. Now, thankfully, the arbitration panel found the insurer's favor and found no liability. But it certainly could have. And under all of the tests for determining whether there's a duty to defend, that certainly meets that test. In this regard, I'd like to direct the Court's attention to one case that I did neglect to put in my brief, and that is American Guarantee and Liability Insurance Company v. Vista Medical Supply, which is 699 F. Sub. 787, where defamation was never formally alleged. But in the course of the litigation, the plaintiff submitted a declaration saying she'd been defamed. And that was a sufficient proof. So, in this case, I really don't think that this is a case where there's a lot of – it's just not a close call. Clearly, non-termination-related defamation was alleged. It was brought out in discovery extensively, and that's enough to get us a duty to defend. Thank you, Ms. Freeman. Good morning, Your Honors. May it please the Court, Erwin Adler on behalf of Federal Insurance Company. I will agree with Ms. Freeman to some degree. This case is much simpler than the cases that you've been listening to this morning. What we're talking about is a nature of a single type of activity, and this is the employment relationship, activities rising out of the employment relationship. What we're talking about here, obviously, is a complaint that Federal reviewed, analyzed the allegations, looked at this in terms of being factual allegations relating to the employment relationship, having concluded that this was an employment relationship. Now, this is a situation that is surprisingly topical, because we found out yesterday that Boeing's chairman was fired for very similar kinds of activities. Violating his own policy, as did his predecessor. The net result of which is that what we have here is a situation in which the complaints set forth very clearly, both the DRC complaint and the Federal complaint, are very clearly that these activities that were undertaken, the invasions of privacy as they were characterized, the various statements that were made, were done as part of a two-factor analysis. One is simply to retaliate for these people's whistleblowing activities and the claims that they were making that the Alpha and Welfide were not complying with the FDA's regulations regarding blood. The second aspect was to basically what we have here is something that falls directly and dead within the employment-related exclusion. Now, it's clear that by the same token, had Welfide and Alpha desired to go ahead and get this kind of coverage, it was available in the marketplace. But they understood, and it's very clear from their own actions in terms of their employment agreements, that they understood these are employment-related activities. They managed to get this into defamation. You don't judge. They get into arbitration, but you don't arbitrate. You wind up looking at the allegations of the complaint, and the complaint is what was relied on. The facts are there in the complaint. This is what is the basis on which the determination of coverage is made. Simply because somebody denies that there is a defense to this doesn't create coverage. If you were to do that, as I believe Judge Brunetti indicated earlier in another connection, that if you were to do that, you would have in every case, the carrier would be obliged to provide a defense and cover the claim. Here's a case where there's an exclusion. It relates to all employment-related activities, and it was applied, and it was applied correctly. I think there was some, I'm trying to think of what the record showed, but it seemed to be on the extramarital and drugs. It seemed to me that it was classified as sort of intercompany gossip. Am I missing that? Was that a basis on which the determination of coverage was made? Or was this direct basis of termination, those two issues? In terms of whether it was or it wasn't, it's very unclear from the complaint. There was gossip that was classified as gossip in one sense. There's also indications in there that this was a subject of the Director of Employment, Human Relations, whatever the category, whatever the title was. That's the category of employment. And what you're also indicated here in terms of the allegations, every one of those allegations, those activities that is alleged by Galustian to have been conducted by Alpha towards him, and the same thing in the DiArco complaint, is followed by the allegation that all of these acts were taken in retaliation for their whistleblowing. So that they've covered that base. And furthermore, there are other allegations that are made in there which are characterized as gossip, but the gossip is being spread and indicated, and it's alleged that it's being spread, for the purpose of harming these people because they have had the temerity to stand up and be whistleblowers. So I think you've got it alleged in there in at least three different ways that this is a situation in which the gossip, whether it be called gossip or whether it be called statements about these people or whether it be called retaliatory activities directly, they are all part of that employment relationship. And were they all part of the discussion of the termination? In other words, the gossip, if I'm not wrong, as I remember the record, the gossip was they were terminated and then people were talking about their termination, which included all these factors. And did that relate to the fact that they had these damage control sessions where the employees were told why these folks were let off? I believe it's in two levels, Your Honor. I think there is some notion that there is rumors floating around during the time that they are employed. And then also in the damage control scenarios after the termination, this is also part of the discussion. Where the employees were told why the termination occurred. Yes. And I don't want to mislead the Court in any way, because what there's also is allegations in that same context that I can't remember which one of the particular individuals fired for embezzlement, failure to report to President Colton in terms of failing to comply with fiduciary obligations. In other words, it's a large mishmash, which is exactly why the employment-related exclusion is put into these policies and why if an insured wants to get that kind of coverage, they go elsewhere and get an employment-related coverage policy. But it's this giant mishmash that Federal does not want to cover. That's why those exclusions are there. Your Honor? Oh, I thought you were going to ask a question. I want to give you the opportunity. I appreciate that. In this case, Your Honor, as far as I'm concerned, unless the Court has any further questions, it seems to me that it's eminently clear that what we're looking at is a case that is fairly clear and doesn't require a great deal of study. I think that the exclusion does not exclude activities that come up without an employment context under the governing case law, which is abundantly set forth in the materials. I think, and I am absolutely certain, that this is a kind of a case that is fairly clear and doesn't require a great deal of study. Thank you. Thank you, Mr. Edler. Ms. Freeman, you get the last word. The exclusion does not exclude activities arising out of the employment relationship. That's not what it says. The exclusion that we're concerned with says arising out of the termination. That's much more narrow. This gossip was going on before the people got to Alpha and Welfide. The record is very clear that it occurred all during the time they were at Alpha and Welfide. In fact, the movie theater incident, that happened when they were well-employed, before the rift had even occurred, and that was the biggest area of gossip. The deposition transcripts that were attached, that's in the record attached to my declaration starting at 660, this is several inches of testimony regarding defamation that had nothing to do with the termination whatsoever. This is testimony that was taken in the lawsuit. How did it come to pass that there was an arbitration? It came to pass because two of the claimants, not all of them, but two of them did have an arbitration agreement in their employment agreement. And they resisted arbitration? They did, but not on the grounds of separate... Well, not exactly. The issue, the only issue that was placed in front of the court was whether or not it was an enforceable arbitration agreement. There was no argument that some of it might be in, some of it might be out. Neither side wanted part of it arbitrated and part of it not arbitrated. But it's only arbitrated if it's employment related, isn't it? Well, not necessarily, because if both sides agreed to arbitrate the whole thing, which is what happened... But I mean under the agreement, it would be subject to arbitration if it's employment related. That's true, but we also have to remember that that particular arbitration agreement is much broader than the exclusion we're talking about here. So why shouldn't we hold as a matter of judicial estoppel that at least with regard to the two claimants who made the argument that they were entitled to arbitration for any kind of arbitration? Why shouldn't we hold as a matter of judicial estoppel that the two claimants who made the argument that they were entitled to arbitration for any kind of arbitration for any kind of arbitration for any employment related dispute that they're bound and judicially estopped to take a different position with regard to the coverage? Because the judge made no ruling that it was all employment related. Judicially estoppel doesn't depend on whether or not the court makes it. Oh, I think it does. It prevents a party from taking inconsistent positions in different litigation and having the same legal... Because the arbitration agreement is much broader than the exclusion. It's not inconsistent. Well, why wouldn't it be inconsistent for a party to say, I demand arbitration because my claims are employment related, and then when it comes to questions of indemnification vis-a-vis Federal, to say, no, these are not all involving employment related matters. That does seem to me to be inconsistent. No, it isn't inconsistent, and it's also brutally unfair to the insured to put them in the position of not giving them a defense. But the doctrine of judicial estoppel is designed to prevent parties from taking inconsistent legal positions in different judicial fora in order to avoid essentially frauds on the court. We're not looking to protect your clients. But the interests were completely different. There's no fraud here. The plaintiffs could have raised the issue of the defamation isn't part of the arbitration agreement. They certainly could have. The arbitration panel itself found in their findings that some of the defamation was not employment related. It's what they said. But again, the application of the doctrine of judicial estoppel doesn't depend upon what the resolution of the prior proceeding was. It is essentially a doctrine that prevents a party from taking inconsistent positions on the same legal issue. But it's not really, as I say, it's not really inconsistent. The arbitration agreement is so much broader. I just feel that the other argument being that an insured has to be able to raise all defenses. I mean, they have to be able to say whatever it is that they can say, especially when they're not being provided with a defense. But the doctrine of the duty to defend is so broad that I think it does permit that. Because what it says is it doesn't say it doesn't say you're not going to convince me that on this point, I'm sorry. I just have a different understanding of judicial estoppel. If there's nothing else that I can help the panel with. Thank you. Thank you.
judges: Brunetti, Silverman,tallman